

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **INSIGHT FOR LIVING MINISTRIES,** | § § § | |
| Plaintiff, | § § | |
| v. | § § | Case No. 4:14-cv-675 |
| **SYLVIA MATTHEWS BURWELL,** in her official capacity as Secretary of the Department of Health and Human Services; **UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; THOMAS E. PEREZ,** in his official capacity as Secretary of the United States Department of Labor; **UNITED STATES DEPARTMENT OF LABOR; JACOB J. LEW,** in his official capacity as Secretary of the United States Department of Treasury; and **THE UNITED STATES DEPARTMENT OF TREASURY,** | § § § § § § § § § § § § § § § | |
| Defendant. | § | |

**<u>MEMORANDUM OPINION AND ORDER GRANTING PRELIMINARY INJUNCTION</u>**

On November 12, 2014, the Court held a hearing on Plaintiff's Application for Preliminary Injunction (Dkt. 3). Having considered Plaintiff's Application for Preliminary Injunction and Brief in Support Thereof (Dkt. 3), Defendants' Opposition to Plaintiff's Motion for Preliminary Injunction (Dkt. 19), Plaintiff's Reply (Dkt. 20) and Plaintiff's Notice of Supplemental Authority (Dkt. 21), as well as the argument of counsel presented at the hearing and relevant law, Plaintiff's Application for Preliminary Injunction (Dkt. 3) is **GRANTED**.

Insight for Living Ministries (IFLM) seeks a preliminary injunction enjoining Defendants from enforcing the regulations issued by the Department of Health and Human Services (HHS)

pursuant to 42 U.S.C. § 300gg-13(a)(4) of the Patient Protection and Affordable Care Act (PPACA), which require group health plans and health insurance issuers offering group or individual health insurance coverage to provide "with respect to women, such additional preventive care and screenings ... as provided for in comprehensive guidelines supported by the Health Resources and Services Administration for purposes of this paragraph." 42 U.S.C. § 300gg-13; *see also* 45 C.F.R. § 147.130(a)(1)(iv). The Health Resources and Services Administration, an agency of HHS, adopted guidelines that define "additional preventive care and screenings" to include all Food and Drug Administration-approved contraceptives, sterilization, and related education and counseling. *See* Coverage of Certain Preventive Services Under the Affordable Care Act, 78 Fed. Reg. 39,870, 39,887 (July 2, 2013). An organization that fails to provide all required coverage is subject to severe fines and penalties. 26 U.S.C. § 4980D(b)(1). An exemption from the requirement is available to religious employers as defined in section 6033(a)(3)(A)(i) or (iii) of the Internal Revenue Code of 1986, for employers with "grandfathered health plans," or for employers with fewer than fifty employees. Plaintiff IFLM does not qualify for an exemption.

However, an "accommodation" is available to any employer organization to opt out of providing coverage that "opposes providing coverage for some or all of any contraceptive services required to be covered...on account of religious objections". 45 C.F.R. § 147.131(b)(1). To qualify for the accommodation, the organization must certify to HHS or to its health insurance carrier or third-party administrator that it (1) opposes providing some or all of any covered contraceptive services on account of religious objections, (2) operates as a nonprofit entity, and (3) holds itself out as a religious organization. 45 C.F.R. § 147.131(b)(1)-(4). When an organization self-certifies, HHS will send a separate notification to the organization's health insurance carrier or third-party

administrator (TPA) who then must provide separate payments for any contraceptive services required to be covered under the law for the organization's plan participants and beneficiaries for so long as they remain enrolled in the organization's plan. 45 C.F.R. § 147.131(c)(2)(i)(B). Once the organization self-certifies either to HHS or its TPA, as in the case here, the TPA is then required to provide or arrange for payments for contraceptive services, a requirement imposed through the Department of Labor's ERISA enforcement authority. 78 Fed.Reg. 39,879-880.

The regulations are clear that neither the participant/beneficiary nor the self-certifying organization are liable for any costs of the contraceptive services. The TPA may seek reimbursement for such payments through adjustments to its Federally-Facilitated Exchange ('FFE") user fees. *Id*. at 39,882. However, the regulations provide that the TPA may also decline to participate in providing such coverage. The impact of the PPACA is that, since IFLM is not exempt, it must directly or indirectly furnish the care to which it objects.

The movant in a preliminary injunction hearing has the burden to demonstrate that (1) the movant has a substantial likelihood of success on the merits; (2) that the movant will suffer irreparable harm if the preliminary injunction is not granted; (3) that the threatened harm outweighs the harm to the opposing party if the preliminary injunction is granted; and (4) that granting the injunction will not disserve the public interest. *See Canal Auth. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974).

Plaintiff has asserted nine separate claims for relief in its Complaint (*see* Dkt. 1), but for the purposes of its application for preliminary injunction, Plaintiff focuses on its Religious Freedom Restoration Act (RFRA) claim. Under RFRA, the "Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person — (1) is in

furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1. In the Fifth Circuit, "a challenged law substantially burdens religious exercise 'if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs.'" *Louisiana Coll. v. Sebelius*, Civil Action No. 12-0463, 2014 WL 3970038, at *10 (W.D. La. Aug. 13, 2014) (quoting *Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004)). "The effect on religion is substantial when, for example, a law 'influences the adherent to act in a way that violates his religious beliefs' or 'forces the adherent to choose between, on the one hand, enjoying some generally available non-trivial benefit, and, on the other hand, following his religious beliefs.'" *Id*. Plaintiff's "religious beliefs forbid it from participating in, providing access to, paying for, or designating others to pay for certain drugs, devices, or procedures that harm or kill a fertilized human egg." Dkt. 3 ¶ 4. The Secretary does not contest this point.

The cases are clear that, once a court determines that the religious tenet or practice is based on sincerely held religious beliefs, the court is not free to assess whether it is a central, critical, or important part of that religion. *See Thomas v. Review Bd. of Ind. Emp't Sec. Div.,* 450 U.S. 707, 717, 101 S.Ct. 1425, 67 L.Ed.2d 624 (1981). IFLM argues that by either notifying HHS or its third-party administrator of its objection under the accommodation procedure, it will either be indirectly or directly participating in or sanctioning the provision of certain contraceptives that it considers to be abortifacients. The burden not only rests in the notification provisions but in the very fact that IFLM's plan provides for the services to which it objects, notwithstanding that it pays nothing for the services and that the notice of such services are either given contemporaneously or separately from other information in the plan. The key distinction is that, if it does not accede in the

accommodation dictated by the regulations, IFLM either faces substantial fines for its religious beliefs or, if it does accede, its plan (at least indirectly) sponsors services to its participants and beneficiaries to which it has a moral objection. IFLM's participants can only receive these services as a result of plan sponsorship. There is no separate policy issued by another insurer.[1]

The Court finds, and Defendants do not dispute, that IFLM holds sincere religious beliefs against providing certain drugs or devices which potentially could harm or kill a fertilized human egg. The accommodation compels or pressures IFLM to perform an act that it was not already performing. The nature of the accommodation provided by the Government would cause IFLM to facilitate, participate, and assist in, actions resulting in the provision of the abortionfacient drugs and renders IFLM complicit in providing its employees with what it contends are abortionfacient drugs. The Government, for example, argues that two of the drugs, Plan B and Ella, are used for a variety of purposes, yet, Plaintiff argues that the principal use is for pregnancy termination to which IFLM objects on the basis of its sincerely held religious beliefs. As noted, if IFLM does not comply with the accommodation provision under the regulations, it faces substantial fines.

Defendants' argument that the accommodation procedure is not a substantial burden on IFLM's religious exercise is unpersuasive. As Judge Rosenthal of the Southern District of Texas

---

[1] The IFLM plan is a self-insured plan with a third party administrator (TPA). IFLM is required to self-certify that it will not act as the plan administrator or claims administrator with respect to contraceptive services or contribute funding of the same. 78 Fed.Reg. 39,879. Upon receipt of the certification, the TPA may decide not to enter into, or remain in, a contractual relationship with the eligible organization to provide administrative services for the plan. The eligible organization is also prohibited from directly or indirectly interfering with the TPA's efforts to provide or arrange separate payments for services or from seeking to influence a TPA decision to provide or arrange such payments. Yet, on the other hand, the Regulations also state that nothing in the final regulations precludes employers or others from expressing any opposition to the use of contraceptives. 78 Fed.Reg. 39,888.

explained:

> Both the TPA and issuer provide coverage and payment *because* the plaintiffs self-certify their unwillingness to do so through the plan itself. But the plaintiffs' employees can obtain such coverage and payment only as long as they are the plaintiffs' employees and on the plaintiffs' group health plan. It is the insurance plan that the religious-organization employer put into place, the issuer or TPA the employer contracted with, and the self-certification form the employer completes and provides the issuer or TPA, that enable the employees to obtain the free access to the contraceptive devices that the plaintiffs find religiously offensive. Even accepting that the government has succeeded in preventing any payment by the religious organization for the religiously offensive devices, there is a causal link between the acts the plaintiffs must do under the accommodation and the provision of contraceptive devices and products to employees on a no-cost sharing basis. The effort to accommodate the religious organizations by reducing their involvement in providing their employees with such access to emergency contraception did not end the plaintiffs' involvement so as to avoid required acts on their part that offend their faith.

*E. Tex. Baptist Univ. v. Sebelius*, 988 F. Supp. 2d 743, 768-69 (S.D. Tex. 2013) (emphasis added); *see also Eternal Word Television Network, Inc. v. Secretary, U.S. Dep't of Health & Human Servs.*, 756 F.3d 1339, 1347 (11th Cir. 2014) (Pryor, J., specially concurring) (concluding that even if certification did not "trigger" coverage, without the certification "the administrator has no legal authority to step into the shoes of the network and provide contraceptive coverage to the employees and beneficiaries are the [plaintiff]").

Requiring IFLM to certify its objections to HHS (or to its TPA) requires IFLM to participate and act in the very arrangement to which it objects on the basis of its sincerely held religious beliefs. The Court therefore finds that IFLM is substantially burdened in its religious exercise.[2]

---

[2] In *Priests for Life et. al. v Unted States Dep't of Health & Human Servs.,* No. 13-5368, the United States Court of Appeals for the D.C. Circuit finds that, under similar facts as those discussed above, there is no substantial burden on a religious organization to comply with the accommodation provision. __, F. 3d. __, 2014 WL 5904732, **11- 14 (D.C. Cir. 2014). Under the D.C. Circuit's analysis, the regulatory opt-out is a simple process. The D.C. Circuit's analysis notes that, even if the court would take as dispositive the plaintiffs' conviction that the

6

IFLM's position is that its religious beliefs prevent it from merely "washing its hands" and allowing what it perceives to be a spilling of innocent blood. Of course, the regulations allow it to advocate its position on abortion as long as that is all it does. The Government, to its credit, has attempted to find some middle ground between two diametrically opposed positions for which there is no middle ground, the right and sanctity of life versus the right to choose. Nevertheless, when the Government superimposes itself as a referee in matters of religion, morals, beliefs, or privacy, it fails miserably.

Plaintiff contends that the substantial burden imposed upon it under the regulations does not further a compelling governmental interest, and, even if it did, it is not the least restrictive means of furthering that compelling governmental interest. Defendants contend that the final regulations promote two important policy goals. First, the regulations provide women with access to contraceptive coverage without cost sharing, thereby advancing the compelling governmental interests in safeguarding public health and ensuring that women have equal access to health care. Second, the regulations advance these interests in a narrowly tailored fashion that protects certain nonprofit religious organizations with religious objections to providing contraceptive coverage from having to contract, arrange, pay or refer for such coverage. 78 Fed.Reg. 39,871. Plaintiff responds

---

accommodation involves them in providing contraception in a manner that substantially burdens their religious exercise, it would still sustain the challenged regulations. *Id*. at *3. The D.C. Circuit notes that a confluence of compelling interests supports maintaining a seamless application of contraceptive coverage to insured individuals. *Id*. In a footnote, the appellate court also states that the plaintiffs have a fourth option under the Act and that is not to offer any health insurance and allow the employees to proceed to the Government exchanges which might be less expensive than providing health insurance. *Id*. at *10, n. 13. The Court of Appeals finds that the burden imposed on the plaintiffs is de minimis and that, under the accommodation provision, the plaintiffs may simply opt out and *wash their hands* of any involvement. *Id*. at **11, 14 (emphasis added). The wording is no doubt particularly poignant for the plaintiffs, who are Catholic religious organizations. *See* Matthew 27:24.

that the mere fact that the Government exempts and accommodates so many organizations under the law undermines its argument that the interests served by the PPACA are compelling. The Court agrees.

The PPACA exempts certain health plans that were in effect when the law was passed. These are called grandfather plans. In 2013, 54% of firms offering health benefits had at least one health plan that is a grandfather plan. Many of these plans do not offer the services thrust upon IFLM. *See* The Kaiser Family Foundation and Health Research & Educational Trust, Employer Health Benefits, 2013 Annual Survey p. 220. For those small firms furnishing coverage with 50 or less employees, the percentage of covered workers in a grandfather plan was approximately 53%. *Id.* at 223. For covered workers enrolled in a plan with employees from 50-199, the percentage in a grandfather plan was approximately 44%. *Id*. Although the number of covered workers in a grandfather plan has been significantly decreasing over the past few years, in 2013, 38% of covered workers were in grandfather plans. No matter how you cut it, a significant portion of the covered insured or their beneficiaries in the United States have been left out of the Government's compelling concern for women's health care issues.[3]

It is no less compelling for an employee of an exempt religious organization or an employee of a company with less than 50 employees providing no coverage to be relieved from the preventive health care mandate if the Government is so concerned with preventive healthcare. IFLM argues that millions of individuals either meet the exemption or do not qualify for coverage under the PPACA for one reason or another. For example, at the hearing before this Court, the Government conceded that many unions do not have to provide abortifacient drugs. It is nonsensical that a labor union is

---

[3] Three in five covered workers are in a self-funded plan. *Id*. at 176.

exempt from providing abortifacient drugs when a religious nonprofit organization is not exempt but must seek an accommodation.

Even if the Court were to find the cited governmental interest compelling, Defendants have not shown that the accommodation regime is the least restrictive means of achieving the governmental purpose. *See E. Tex. Baptist Univ. v. Sebelius*, 988 F. Supp. 2d 743, 770 (S.D. Tex. 2013) (discussing several "less restrictive means" identified by courts).

IFLM will suffer further irreparable harm if the injunction is denied and it is forced to litigate its constitutional claims under the overwhelming weight of substantial fines for its noncompliance. Plaintiff's injury outweighs Defendants' injury if the injunction is granted. The injunction maintains the *status quo* between the parties. Finally, public interest is not disserved by granting the injunction because "[p]rotecting constitutional rights and the rights under RFRA are in the public's interest." *Id*. at 771. IFLM is entitled to a preliminary injunction.

The Court acknowledges that there is no easy solution to the problem addressed and that in any event the issue will be taken up by any number of higher courts before it is put to rest. At the hearing before this Court, the Government's position was advocated well. But in the end analysis, when the issue is a close one, the Court will err on the side of the First Amendment which prohibits Congress from making any law impeding the free exercise of religion — whether that law has a direct effect or indirect effect on the free exercise of the same.

Plaintiff's Application for Preliminary Injunction (Dkt. 3) is **GRANTED**. Plaintiff's religious exercise is substantially burdened by the mandate to provide certain contraceptives under the PPACA and the religious employer accommodation promulgated by HHS. Defendants are enjoined from enforcing against Insight for Living Ministries the substantive requirements set forth

in 42 U.S.C. § 300gg-13(a)(4) and its implementing guidelines and regulations, and from assessing fines or taking other enforcement action against Insight for Living Ministries for noncompliance. This preliminary injunction takes effect immediately, and shall remain in effect pending entry of final judgment in this matter or further order of this Court.

**SO ORDERED.**

**SIGNED this 25th day of November, 2014.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE